IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Phillip Lee Spears, Jr., #297965,<br><br>                    Plaintiff,<br><br>    vs.<br><br>Jon E. Ozmint, Director of SCDC, et al.,<br><br>                    Defendants. | Civil Action No. 6:09-2800-JMC-KFM<br><br>**REPORT OF MAGISTRATE JUDGE** |

This matter is before the court on the defendants' motion for summary judgment (doc. 48). The plaintiff, who is a state prisoner proceeding *pro se*, seeks relief pursuant to Title 42, United States Code, Section 1983. The plaintiff claims that employees within the South Carolina Department of Corrections ("SCDC") failed to protect him from an altercation with his cellmate in December 2008 at Lee Correctional Institution ("Lee"). The remaining[1] named defendants are Keith McBride, a Correctional Officer at Lee; Anthony Padula, the Warden of Lee; Rosa Hilton, the Classification Case Worker for the Special Management Unit ("SMU") at Lee; Lieutenant Jenkins, a Correctional Officer at Lee; Jon Ozmint, the Director of the SCDC; and Bruce Oberman, the Director of the SMU at Lee.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and submit findings and recommendations to the District Court.

On April 12, 2010, the defendants filed a motion for summary judgment. By order filed April 13, 2010, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the summary judgment dismissal procedure and the possible

---

[1]The Institution Classification Committee was dismissed from the case by the Honorable Patrick Michael Duffy, Senior United States District Judge, on May 5, 2010.

consequences if he failed to adequately respond to the motion. The plaintiff filed his response in opposition on June 17, 2010. The defendants filed a reply on June 28, 2010.

## **FACTS PRESENTED**

The plaintiff alleges that on December 23, 2008, the defendants failed to protect him from his cellmate, Bennie Bines, when Bines attacked him in their cell. The SCDC's policy and procedure manual concerning the classification of inmates (OO-21.04 ¶¶ 48.1-48.3) provides that "[c]ell assignment will be made on the basis of an inmate's criminal and behavior profile, physical and mental health restrictions, prior history of assaultive behavior, Security Threat Group affiliation, and separation requirements" (Rosa Hilton aff. ¶6, ex. A). Rosa Hilton prepared the cell assignment form for the plaintiff based on the criteria noted in the policy. According to Ms. Hilton, based upon her review of the information concerning the plaintiff and Bines, she is satisfied that the cell assignment was proper under the SCDC's policy (Hilton aff. ¶¶ 7-8, ex. B).

According to the affidavit of Warden Padula, at no time before December 23, 2008, was he aware of any problems between the plaintiff and Bines, nor was he aware of any complaints made by the plaintiff regarding his cell assignment. Further, he was unaware of any facts from which he could have or should have inferred that the plaintiff was at risk prior to the incident. Warden Padula further testified that, based upon his review of information concerning the plaintiff and Bines, he is satisfied that the plaintiff's cell assignment was proper and within the bounds of SCDC policy and procedure (Padula aff. ¶¶8-11).

Defendant Correctional Officer Keith McBride testified in his affidavit that at the time of the incident on December 23, 2008, he was escorting the plaintiff back to his cell after a disciplinary hearing. Before he opened the cell door, Officer McBride observed Bines sleeping in his bunk. Officer McBride ordered Bines to approach the door so that he could be handcuffed for security purposes. Bines ignored the directive and appeared to continue sleeping. Officer McBride began placing the plaintiff back in the cell when Bines

jumped off the top bunk and began striking the plaintiff before Officer McBride could remove the plaintiff's handcuffs. Officer McBride testified that Bines had not threatened the plaintiff in any way before he placed the plaintiff in the cell. Further, he testified he was unaware of any facts from which he could have or should have inferred that the plaintiff was at risk prior to the incident. Officer McBride attempted to stop the altercation by using verbal commands and spraying chemical munitions. The plaintiff was sent to the medical department for evaluation after the incident, and Bines was charged with striking an inmate (McBride aff. ¶¶6, 11, ex. A).

According to the affidavit of Nurse Delores Johnson and the SCDC's medical summary, the plaintiff was evaluated by the medical department on the date of the incident. He was observed to have a superficial laceration below his left eye and inside the left side of his bottom lip. The plaintiff complained of soreness in his jaw and dizziness at times. He ambulated with a steady gait. The plaintiff was given Tylenol for soreness. On January 1, 2009, the plaintiff was seen for a follow-up examination and stated that he was fine. There was no redness in his eyes, and he had no respiratory difficulties (Johnson aff. ¶¶ 3-10, ex. A). According to the medical summary, on January 5, 2009, the plaintiff complained that he had dizzy spells, his left jaw hurt, and his left eye was blurry. He also complained that he had trouble breathing because of the chemical munitions that were sprayed in his cell. The nurse requested that the doctor advise as to the plaintiff's complaints (Johnson aff., ex. A).

The plaintiff submitted affidavits from several inmates at Broad River Correctional Institution, where the plaintiff is currently incarcerated. Those inmates testified to the plaintiff's complaints about nightmares, headaches, and problems with his vision in his left eye since the incident (pl. resp. m.s.j., ex. 1). The plaintiff testified in his affidavit that when Officer McBride took him back to his cell after the disciplinary hearing, Officer McBride did not give Bines a directive to come to the door to get handcuffed, and Bines was not asleep. The plaintiff stated in his affidavit that before Officer McBride opened the cell door, Bines told him not to put the plaintiff back in the cell with him and that if he did put the

3

plaintiff back in the cell with him "he was going to beat [the plaintiff's] ass." The plaintiff claims he told Officer McBride not to put him the cell, but the officer laughed at him and gave him a directive to go in or "get gassed." He claims he also asked to have his restraints removed before he went in the cell, but Officer McBride refused. When the plaintiff walked in the cell, Bines attacked him, striking him in the face and head. The plaintiff claims Officer McBride watched him get assaulted, but then opened the flap and sprayed the plaintiff and Bines with chemical munitions. Officer McBride then handcuffed Bines and removed him from the cell. The plaintiff claims he was left alone for "some time" before Officer McBride, another officer, and a nurse came to check on him. At that time, the plaintiff was taken to the medical department where he was treated. However, he claims his later requests for treatment of his headaches, dizziness, and soreness were ignored (pl. resp. m.s.j., ex. 1, pl. aff. ¶¶ 4-18, 25, 29-31).

## **APPLICABLE LAW AND ANALYSIS**

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and

4

ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248. Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must provide existence of every element essential to his action which he bears the burden of adducing at a trial on the merits.

The plaintiff alleges that the defendants failed to provide for his reasonable safety and that this failure constituted cruel and unusual punishment violating the Eighth Amendment to the United States Constitution. Deliberate indifference to an inmate's safety needs is actionable under Section 1983. *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994) (prison officials have duty to protect prisoners from violence "at the hands of other prisoners") (brought under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971)). *See also Miltier v. Beorn*, 896 F.2d 848, 851-852 (4th Cir. 1990) ("A defendant acts recklessly by disregarding a substantial risk of danger that is

5

either known to the defendant or which would be apparent to a reasonable person in the defendant's position.").

The Eighth Amendment expressly prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. To succeed on any Eighth Amendment claim for cruel and unusual punishment, a prisoner must prove: (1) objectively, the deprivation of a basic human need was sufficiently serious, and (2) subjectively, the prison officials acted with a "sufficiently culpable state of mind." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991); *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). "'[I]t is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock.'" *Moore v. Winebrenner*, 927 F.2d 1312, 1316 (4th Cir. 1991) (quoting *Whitley v. Albers,* 475 U.S. 312, 319 (1986)). The United States Supreme Court has noted:

> [A] prison official cannot be held liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk of inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. This approach comports best with the text of the Amendment as our cases have interpreted it. The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments." An act or omission unaccompanied by knowledge of a significant risk of harm might well be something society wishes to discourage, and if harm does result society might well wish to assure compensation. The common law reflects such concerns when it imposes tort liability on a purely objective basis. *See* Prosser and Keeton §§ 2, 34, pp. 6, 213-214; *see also* Federal Tort Claims Act, 28 U.S.C. §§ 2671-2680; *United States v. Muniz*, 374 U.S. 150, 83 S.Ct. 1850, 10 L.Ed.2d 805 (1963). But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

6

*Farmer*, 511 U.S. at 837-38.

The defendants have produced the affidavits of Warden Padula and Ms. Hilton in support of summary judgment. Ms. Hilton, the Classification Case Worker for inmates housed in the SMU at Lee at the time of the incident, and Warden Padula testified that the plaintiff's classification with Bines was performed in accordance with SCDC policy and procedure that included a thorough review of the types of offenses for which the two men were convicted (i.e., violent or nonviolent), the nature of the offenses for which they were convicted, their ages, etc. The plaintiff's classification was further reviewed and approved by the Institution's Inmate Classification Committee. Here, as argued by the defendants, the evidence shows that the plaintiff was properly classified with Bines at the time of the incident, and the plaintiff has failed to produce any evidence to the contrary.

Further, as to the second element, the plaintiff has failed to show that the prison officials at Lee acted with deliberate indifference to his health or safety. The plaintiff states that his safety was placed at risk by being confined in a cell with Inmate Bines. However, the plaintiff cannot show that Bines posed a risk to him, that the defendants were aware of said risk, or that the defendants drew any inference from the inmates' official records or behavior that the plaintiff's safety could be at risk. Both the Warden and Ms. Hilton testified they were unaware of any problems between the plaintiff and Bines prior to the incident, and neither were aware of any complaints made by the plaintiff regarding his cell assignment prior to the incident.

The plaintiff alleges Inmate Bines verbally threatened him immediately before he was placed in the cell with Bines. Officer McBride has testified that Bines was asleep on his bunk at the time the plaintiff was placed in his cell. Viewing the evidence in a light most favorable to the plaintiff, as this court must on a motion for summary judgment, such verbal threats made by a cellmate as alleged in the present case cannot constitute deliberate indifference by Officer McBride in the context of the situation at hand. Inmate

7

Bines had not been involved in any prior altercations with the plaintiff before the incident at issue. The plaintiff has not alleged that Bines presented a weapon or any prior tendency toward violence directed at the plaintiff. Bines' threats, if any, were simply verbal in nature and appeared rooted in the fact that Bines did not want to be double bunked on the day of the incident. Bines was confined in a control space at the time of the alleged statements. As argued by the defendants, in that context, it is not practical to expect an SCDC officer to relocate an inmate in the SMU every time his roommate expresses an objection to being double bunked. Further, it cannot be said that the defendants acted with "deliberate indifference" once they became aware of the physical altercation between the plaintiff and his cellmate. By the plaintiff's own admission, Officer McBride responded to the altercation by giving Bines direct orders to stop fighting with the plaintiff and by spraying chemical spray into the cell to stop the fight. The plaintiff further admits that, following the altercation, he was taken to the medical division for treatment for his injuries. As the plaintiff has failed to demonstrate that his classification or Inmate Bines posed a sufficiently serious risk or that the defendants acted with deliberate indifference to that risk, summary judgment should be granted on this claim.[2]

To the extent the plaintiff asserts a claim for deliberate indifference to a serious medical need, such claim also fails. "Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice." *Jackson v. Fair*, 846 F.2d 811, 817 (1st Cir. 1988). The government is "obligat[ed] to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble,* 429 U.S. 97,102 (1976). This obligation arises from an inmate's complete dependency upon prison medical staff to provide essential medical services. *Id.* The duty to attend to prisoners' medical needs, however,

---

[2]The defendants also argue that the plaintiff failed to exhaust his administrative remedies. Since this court finds the claims fail on the merits, this argument will not be addressed.

does not presuppose "that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Id.* at 105. Instead, it is only when prison officials have exhibited "deliberate indifference" to a prisoner's "serious medical needs" that the Eighth Amendment is offended. *Id.* at 104. As such, "an inadvertent failure to provide adequate medical care" will not comprise an Eighth Amendment breach. *Id.* at 105-106.

In order to state a claim, "[a] plaintiff must satisfy two elements . . . : he must show a serious medical need and he must prove the defendant's purposeful indifference thereto." *Sires v. Berman*, 834 F.2d 9, 12 (1st Cir. 1987). A medical need is "serious" if "it is diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would recognize the necessity for a doctor's attention." *Gaudreault v. Municipality of Salem, Mass.,* 923 F.2d 203, 208 (1st Cir. 1990). "Deliberate indifference may be demonstrated by either actual intent or reckless disregard. A defendant acts recklessly by disregarding a substantial risk of danger that is either known to the defendant or which would be apparent to a reasonable person in the defendant's position." *Miltier v. Beorn*, 896 F.2d 848, 851-52 (4th Cir. 1990) (citation omitted). "It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment." *Estelle*, 429 U.S. at 106. Mere negligence or malpractice does not violate the Eighth Amendment. *Id.* Moreover, disagreements between an inmate and a physician over the inmate's proper medical care do not state a Section 1983 claim unless exceptional circumstances are alleged. *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985).

Here, it is undisputed that the plaintiff was examined and treated by the medical department following the incident. The named defendants are non-medical personnel. The plaintiff has failed to allege that these defendants personally acted or failed to act in violation of his constitutional rights in this regard. *See Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) ("Having failed to allege any personal connection between [the

defendant] and any denial of [the plaintiff's] constitutional rights, the action against him must fail."). Furthermore, the doctrine of *respondeat superior* generally is inapplicable to Section 1983 suits. *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978); *Vinnedge*, 550 F.2d at 928-29. The plaintiff must establish three elements to hold a supervisor liable for a constitutional injury inflicted by a subordinate: (1) the supervisor had actual or constructive knowledge that a subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to people like the plaintiff; (2) the supervisor's response was so inadequate as to constitute deliberate indifference or tacit authorization of the subordinate's conduct; and (3) there is an "affirmative causal link" between the supervisor's inaction and the plaintiff's constitutional injury. *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir.). The plaintiff has failed to make such a showing here. *See Miltier*, 896 F.2d at 854 (to bring claim alleging denial of medical treatment against non-medical supervisory prison personnel, inmate must show that such officials were personally involved with a denial of treatment, deliberately interfered with prison doctors' treatment, or tacitly authorized or were indifferent to the prison physicians' misconduct). Based upon the foregoing, any medical indifference claim against these defendants fails.

Lastly, the defendants argue they are entitled to qualified immunity as their conduct did not violate any clearly-established constitutional or statutory rights of which a reasonable person should have known. This court agrees. Qualified immunity protects government officials performing discretionary functions from civil damage suits as long as the conduct in question does not "violate clearly established rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This qualified immunity is lost if an official violates a constitutional or statutory right of the plaintiff that was clearly established at the time of the alleged violation so that an objectively reasonable official in the defendant's position would have known of it. *Id.*

In addressing qualified immunity, the United States Supreme Court has held that "a court must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all and, if so, proceed to determine whether that right was clearly established at the time of the alleged violation." *Wilson v. Layne*, 526 U.S. 603, 609 (1999); *see also Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000). Further, the Supreme Court held that "[d]eciding the constitutional question before addressing the qualified immunity question also promotes clarity in the legal standards for official conduct, to the benefit of both the officers and the general public." *Wilson*, 526 U.S. at 609. If the court first determines that no right has been violated, the inquiry ends there "because government officials cannot have known of a right that does not exist." *Porterfield v. Lott*, 156 F.3d 563, 567 (4th Cir. 1998). The plaintiff's conclusory allegations fail to demonstrate that the defendants violated his constitutional rights. Therefore, the defendants are entitled to qualified immunity.

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, it is recommended that the defendants' motion for summary judgment (doc. 48) be granted.

IT IS SO RECOMMENDED.

s/Kevin F. McDonald
United States Magistrate Judge

September 16, 2010

Greenville, South Carolina